181 N.J. Super. 542 (1981)
438 A.2d 577
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARGARET HALLERAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 15, 1981.
Decided November 30, 1981.
*543 Before Judges MICHELS, McELROY and J.H. COLEMAN.
Vincent E. Halleran, Jr., attorney for appellant.
Alexander D. Lehrer, Monmouth County Prosecutor, attorney for respondent, (Jennifer L. Gottschalk, Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
*544 Defendant Margaret Halleran was convicted in the Municipal Court of the Borough of Freehold of petty disorderly conduct in making anonymous telephone calls at extremely inconvenient hours to Paul Ferguson  her former husband  for the purpose of harassing him, in violation of N.J.S.A. 2C:33-4(a). She was fined $50 and sentenced to the Monmouth County Jail for 15 days, which sentence was suspended upon the condition that she refrain from making any anonymous telephone calls, as proscribed by the said statute, in the future. She appealed to the Law Division where, after a trial de novo on the record below, she was again found guilty and the same sentence was imposed.
According to the State's proofs, which are essentially uncontroverted, during the period from January 2, 1980 to February 28, 1980 Ferguson received approximately 28 telephone calls in the early hours of the morning at his home in Freehold, New Jersey. The calls were received between about 3:30 a.m. and about 4:45 a.m. Ferguson testified that he never had any conversation with the individual making these calls. Rather, the caller merely waited until he answered the telephone and then the caller either hung up or simply breathed into the telephone.
Ferguson contacted the Anonymous Call Bureau of New Jersey Bell Telephone Company (telephone company) requesting that the calls be traced. The telephone company utilized telephone tracing equipment attached to the Ferguson's telephone line which indicated that the calls originated from a telephone in defendant's home located in Colts Neck, New Jersey. A representative of the telephone company described the method of operation of the tracing equipment and testified that during the period when the telephone trace was set, six calls between the hours of 3:39 a.m. and 4:20 a.m. were made from the telephone assigned to defendant to the number assigned to Ferguson. These recorded calls corresponded with the annoyance calls reported by Ferguson to the company.
*545 The proofs also showed that there were only two people living in the home from which the annoyance calls originated: defendant and her 11-year-old daughter, who was a product of defendant's marriage to Ferguson. According to Ferguson, his daughter did not know his telephone number, and while he called her she never called him.
The trial judge found that defendant had made the telephone calls and that these calls were made by her in the early hours of the morning to harass her ex-husband. In finding defendant guilty of the petty disorderly person offense, the trial judge specifically found that defendant's 11-year-old daughter did not make the calls. Defendant appealed.

Jurisdiction
Defendant first contends that the Municipal Court of the Borough of Freehold lacked jurisdiction over this matter because the offense was not committed within the territorial jurisdiction of that court. Defendant argues that the offense was committed in Colts Neck where the calls originated and not Freehold where the calls were received.
Jurisdiction over the subject matter is the power of the court to hear and determine cases of the class to which the proceedings in question belongs. The power of the court to deal with the subject matter of any given action rests solely in its having been clothed with such power by either the Constitution or statutory grant. State v. Osborn, 32 N.J. 117, 122 (1960); Abbott v. Beth Israel Cem. Ass'n of Woodbridge, 13 N.J. 528, 537 (1953); Petersen v. Falzarano, 6 N.J. 447, 454 (1951). Our Legislature conferred upon each municipal court and the judges thereof jurisdiction over petty disorderly person offenses set forth in the New Jersey Code of Criminal Justice (Code) which occur within the territorial jurisdiction of the court (N.J.S.A. 2A:8-21(d)), and defined the territorial jurisdiction of each such municipal court to be the territory embraced within such municipality. N.J.S.A. 2A:8-20.
*546 The petty disorderly person offense with which defendant was charged is described in N.J.S.A. 2C:33-4 (L. 1978, c. 95, § 2C:33-4), which reads as follows:
A person commits a petty disorderly persons offense if, with purpose to harass another, he:
a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
The precursor of this section of the Code was N.J.S.A. 2A:170-29 (amended L. 1965, c. 172, § 1), which, in pertinent part, provided:
........
3. Any person who telephones another and addresses to such person any profane, lewd, lascivious, indecent or disgusting remarks; or
4. Any person who repeatedly telephones another for the purpose of annoying or molesting such person 
Is a disorderly person.
Any offense committed under paragraphs 3 or 4 of this section may be deemed to have taken place at either the place at which the telephone call was made or the place at which the telephone call was received.
While N.J.S.A. 2C:33-4 does not contain the specific grant of jurisdiction to both the court of the municipality from which the telephone call was made and the court of the municipality in which the telephone call was received, nonetheless, we hold that the Freehold Municipal Court had jurisdiction over this matter. N.J.S.A. 2C:1-1 of the new Code, which sets forth rules of construction, in pertinent part provides:
e. The provisions of the code not inconsistent with those of prior laws shall be construed as a continuation of such laws.
It is evident that the provisions of N.J.S.A. 2C:33-4 are not inconsistent with those of the prior law, N.J.S.A. 2A:170-29. Therefore, N.J.S.A. 2C:33-4 must be construed as a continuation of the prior law, and the jurisdictional grant contained in N.J.S.A. 2A:170-29 carried over to the new Code. See State v. Butler, 178 N.J. Super. 205, 210-211 (App.Div. 1981), certif. granted *547 87 N.J. 395 (1981). Cf. State v. Dalglish, 86 N.J., 503, 511-515 (1981) (carrying over pre-Code case law which is consistent with provisions of the Code). In our view the Legislature undoubtedly intended that a defendant charged with a petty disorderly person offense under N.J.S.A. 2C:33-4(a) could be tried either in the municipal court within the municipality from which the call was placed or in the municipal court in the municipality in which the call was received.
Furthermore, even if N.J.S.A. 2C:33-4 were not construed as continuing the jurisdictional provisions of N.J.S.A. 2A:170-29, we are satisfied that Freehold Municipal Court had jurisdiction in this matter. There is nothing in N.J.S.A. 2C:33-4 or its legislative history to show an intention on the part of our Legislature to depart from the grant to municipal courts jurisdiction over certain specified offenses "occurring within the territorial jurisdiction of the court." N.J.S.A. 2A:8-21. However, this statute does not furnish any guidance for determining the place of the offense and N.J.S.A. 2C:33-4 does not specify the situs of the offense. Thus, since the statute defining the offense is not explicit, the place where the offense was committed  the locus delecti  must be determined from the nature of the offense charged and the location of the act or acts constituting it. See Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340, 347 (1961); United States v. Anderson, 328 U.S. 699, 66 S.Ct. 1213, 90 L.Ed. 1529, 1532 (1946); United States v. Tedesco, 635 F.2d 902, 905 (1 Cir.1980); United States v. Chestnut, 533 F.2d 40, 46-47 (2 Cir.1976), cert. den. 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1976).
One helpful technique utilized in making this determination is to examine the key verbs in the statute defining the offense. See United States v. Tedesco; United States v. Chestnut, both supra. The pertinent section of N.J.S.A. 2C:33-4(a) makes it a petty disorderly person offense if a person, with purpose to harass another, makes a communication or communications anonymously or at extremely inconvenient hours or in any manner likely to cause annoyance or harm. The words of this *548 statute indicate that our Legislature was concerned with harassing communications likely to cause annoyance or alarm to another. The very nature of the offense is the harassment of another by certain conduct proscribed by the statute. While the offense is not committed until the proscribed call is made, the offense is not completed until the call is received. Thus, to convict a person of the petty disorderly offense of harassment under subsection (a) of the statute, the proscribed communication must have been received. In such circumstances, the offense is of a continuing nature, which can be prosecuted either in the municipality from which the proscribed call was made or in the municipality in which it is received.
Accordingly, we hold that the Municipal Court of Freehold had jurisdiction to try and convict defendant for a violation of N.J.S.A. 2C:33-4(a), even though the proscribed call was made by her from Colts Neck.

Sufficiency of the Evidence
Defendant also contends that the State failed to prove beyond a reasonable doubt that she made the telephone calls. The thrust of defendant's argument is that since there was no direct proof identifying her as the person making the calls, and since the proofs showed that there was another person living in the house, there was no basis to conclude that she made the calls. We disagree.
Careful review of the record satisfies us that there was sufficient credible evidence in the record as a whole from which the trier of fact could find defendant guilty beyond a reasonable doubt of violating the provisions of N.J.S.A. 2C:33-4(a). State v. Johnson, 42 N.J. 146, 161-162 (1964). We would simply add that the State did not have to exclude every reasonable hypothesis except that defendant was guilty. The short answer to defendant's challenge to the finding of guilt is found in the proper test to be applied on a motion for judgment of acquittal, which is "in weighing circumstantial evidence to determine *549 if guilt exists as in the case of direct or testimonial evidence, namely, whether it is sufficient to generate belief of guilty beyond a reasonable doubt." State v. Mills, 51 N.J. 277, 287 (1968), cert. den. 393 U.S. 832, 89 S.Ct. 105, 21 L.Ed.2d 104 (1968). See, also, State v. Brown, 80 N.J. 587, 598-599 (1979); State v. Mayberry, 52 N.J. 413, 436-437 (1968), cert. den. 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969). The State proved that the harassing calls emanated from a telephone in defendant's house and that defendant occupied the house with her 11-year-old daughter. The testimony also established that the defendant's 11-year-old daughter did not know her father's telephone number, and never called him. The State's proofs, when weighed against defendant's argument that her 11-year-old daughter could have made the many earlier-hour calls, furnish ample believable evidence to generate a belief beyond a reasonable doubt of defendant's guilt.
Affirmed.