**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4094-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KENNETH KEARSTAN,

     Defendant-Appellant.

_____

Submitted April 27, 2021 – Decided May 18, 2021

Before Judges Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 19-030.

Law Offices of Jef Henninger, attorney for the appellant (Jonathan Poling, on the briefs).

Robert J. Carroll, Acting Morris County Prosecutor, attorney for respondent (Paula Jordao, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Kenneth Kearstan appeals from a Law Division order denying his petition for post-conviction relief (PCR) and motion to withdraw his guilty plea. We affirm.

I.

After being charged with driving while intoxicated (DWI), N.J.S.A. 39:4-50, leaving the scene of an accident, N.J.S.A. 39:4-129, and failure to report an accident, N.J.S.A. 39:4-130, defendant entered a conditional guilty plea in the Washington Township municipal court to the DWI offense. As part of the plea agreement, the State dismissed the remaining charges.

Defendant's DWI conviction was based on events that took place on April 18, 2017. At that time, defendant and his wife were in the midst of divorce proceedings, had been separated for nine months, and he was no longer residing at the marital home.

At approximately 5:20 p.m., defendant arrived at his former residence with damage to his car. Defendant's wife saw the vehicle, called 911, and while on the phone with the operator, learned that defendant had used a key to unlock the door to the house and entered the basement without her knowledge. She reported that defendant had an alcohol issue, and believed he was intoxicated, as he "smell[ed] a little."

2

Specifically, in her statement to the police, defendant's wife told police he arrived at the house "impaired and slurring his words." When she asked him to leave, defendant stated he "could not secure a ride." Defendant also told his wife, "in a slurred voice," that he took a Xanax in the morning.

A Washington Township police officer, Michael Thompson, arrived at the residence at approximately 5:50 p.m. to conduct a welfare check. Defendant's wife met Thompson at the front door and invited him into the home. Thompson testified at the suppression hearing that prior to entering the home, he too noticed damage to defendant's vehicle. In his investigation report, Thompson indicated he heard a "metal popping" sound coming from defendant's car, which was "indicative of a recently operated motor vehicle." Thompson also observed the rearview mirror of the vehicle's passenger side was damaged as well as scrapes to the front passenger side bumper.

As soon as Thompson entered the home, defendant's wife informed him that defendant was in the basement and believed he had taken medication and was intoxicated. She repeatedly stated her concern for defendant's well-being, but was worried that defendant was in the home, as she had previously informed him that he was not permitted in the house when inebriated.

A-4094-19

Thompson testified that he stood at the top of the stairs and called down to defendant to come up from the basement. When defendant entered the stairway, he was off balance, staggering, and his pants were falling down. Thompson stated that he detected an odor of alcohol emanating from defendant, that it was clear that defendant was "extremely intoxicated," and that he needed assistance simply to stand up.

Thompson also testified that he asked defendant to exit the home so they could speak outside in order to avoid an altercation between defendant and his wife and so defendant's children would not witness their interaction. While on the porch, Thompson began questioning defendant and observed that defendant's eyes were bloodshot, and his speech slurred. Thompson testified that he again smelled alcohol emanating from defendant.

Defendant told Thompson that he had no memory of being involved in an accident but acknowledged the vehicle was not damaged the previous day. After initially denying drinking that day, defendant eventually admitted to consuming three small airplane-sized bottles of alcohol. Defendant also told Thompson that he did not consume any alcohol after entering the marital home, and Thompson did not find any alcoholic beverages in the home after checking the basement and speaking with defendant's wife.

A-4094-19

In light of his observations and defendant's statements, Thompson attempted to administer standard field sobriety tests. After defendant stated he was unable to complete the walk-and-turn test, Thompson decided to cease administering the remainder of the tests out of concern that defendant's condition would cause him to fall and injure himself.

Defendant was placed under arrest and Thompson and another officer requested that a first aid squad meet them at police headquarters, as Thompson was concerned defendant was exhibiting signs of an overdose. Defendant was subsequently transported to Hackettstown Hospital where he signed a consent form to draw and test his blood. The test revealed defendant had a blood alcohol concentration (BAC) of 0.29%, well above the legal limit. The summonses, however, listed defendant's address as a location in Edison rather than at the marital home.

Before the municipal court, defendant moved to suppress the results of his blood alcohol test and the incriminating statements he made to Thompson claiming the police violated his Fourth and Fifth Amendment rights under the United States Constitution and corresponding rights under the New Jersey

Constitution. Specifically, defendant maintained that Thompson improperly entered his home without consent and failed to administer Miranda[1] warnings.

At the conclusion of the suppression hearing in which Thompson was the only testifying witness, the municipal court judge denied defendant's motion, concluding that defendant's wife knowingly and willingly invited the police into the family home. The judge also concluded that the warrantless entry was justified under the community-caretaker and emergency-aid doctrines. Finally, the judge determined that the subsequent questioning of defendant did not constitute a custodial interrogation warranting Miranda warnings. Instead, the judge characterized the arresting officer's questioning as similar to the preliminary, roadside investigation of an individual suspected of drunk driving.

After denying defendant's motion, the court granted his counsel's request to briefly adjourn the proceedings to discuss a conditional plea agreement with a stay of any sentence. Counsel concluded his plea discussions and defendant indicated to the court he was prepared to plead guilty plea to the DWI charge.

The court informed defendant that what he "say[s] in court today, should [he] win [an] appeal, cannot be used against [him] at any subsequent trial."

---

[1] See Miranda v. Arizona, 384 U.S. 436 (1966).

A-4094-19

Defendant did not respond directly to the court's statement, resulting in the court offering to conduct the plea hearing "another time."

Defendant stated he was "really confused." His counsel accordingly reiterated the court's comment that defendant's statements would not "jeopardize [his] rights to appeal the decision that the judge made today on the statements and on the search." Defendant responded "[o]kay," and that he understood his counsel's statements.

The court proceeded to elicit from defendant a factual basis. Defendant admitted he was "operat[ing] a motor vehicle . . . [while] under the influence of alcohol." He stated he consumed three "airplane type bottles" of vodka before operating his vehicle, and that his BAC was analyzed at .29%. Defendant also stated there was no issue with the way the blood test was administered and that it was "unsafe and improper" for him to operate his vehicle in his state of impairment on April 18, 2017. He testified that he understood it was his second offense and that corresponding fines and penalties would follow. Finally, defendant told the court he was "entering this plea both knowingly and voluntarily," and he was satisfied with his counsel's services.

Based on defendant's testimony, the court found defendant understood the charges against him and his right to a trial. It also found defendant gave a

A-4094-19

sufficient factual basis for the plea, to which he knowingly and voluntarily entered.

Because this was defendant's second DWI conviction, the court assessed mandatory fines and penalties, revoked his driving privileges for two years, and required him to complete forty-eight hours of treatment at the Intoxicated Driver's Resource Center. Defendant was also obligated to install an ignition interlock device on his vehicle for one year upon restoration of his driving privileges. Finally, the court stayed defendant's sentence pending appeal.

Defendant appealed his conviction to the Law Division. On de novo review, the Law Division affirmed the municipal court's suppression ruling and similarly concluded the police did not violate defendant's Fourth or Fifth Amendment rights. The court imposed the same sentence as the municipal court and similarly stayed his sentence, but ordered defendant to abstain from using alcohol, and appear periodically in court for compliance monitoring.

Defendant appealed and we affirmed. In our unpublished opinion, we explained that Thompson's initial questioning of defendant was brief, occurred inside and then outside the home, and took place only after he was expressly invited into the residence by defendant's wife. State v. Kearstan, No. A-5867-17 (App. Div. Sept. 20, 2019). Based on those circumstances, we rejected

defendant's claim that the police violated his Fourth or Fifth Amendment rights and agreed with the trial court that "Thompson had a lawful right to be in the home based on valid consent obtained from defendant's wife, and appropriately questioned defendant without the need for Miranda warnings." Kearstan, slip op. at 7.

Defendant did not seek further review of his conviction with the Supreme Court. Instead, he filed a motion to withdraw his guilty plea under State v. Slater,[2] and argued he received ineffective effective assistance of counsel under

---

[2] 198 N.J. 145 (2009). In Slater, the Supreme Court identified the following four factors for courts to evaluate when considering an application to vacate a guilty plea: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Id. at 150. "Trial courts should consider and balance all of the factors discussed above in assessing a motion for withdrawal of a plea. No factor is mandatory; if one is missing, that does not automatically disqualify or dictate relief." Id. at 162.

A-4094-19

the two-part test detailed in <u>Strickland v. Washington</u>[3] and <u>State v. Fritz</u>[4] (<u>Strickland</u>/<u>Fritz</u>). The municipal court heard oral arguments and denied defendant's application, reinstated his sentence, and directed that he surrender his driver's license.

Defendant, thereafter, sought de novo review in the Law Division and contended that his trial counsel was ineffective for failing to argue that he could not be convicted of violating N.J.S.A. 39:4-50 as there was no proof he was operating his car on April 18, 2017 while intoxicated, and that the original summonses contained an incorrect address for his former residence. He also sought to withdraw his guilty plea maintaining that he had a colorable claim of

---

[3] 466 U.S. 668 (1984). To establish a prima facie case of ineffective assistance of counsel, a defendant must prove:

> First, . . . that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
>
> [<u>Id.</u> at 687.]

[4] 105 N.J. 42 (1987).

A-4094-19

innocence, his plea was not voluntary, and the State would not suffer prejudice if his plea was vacated.

During oral argument, and at defendant's counsel's request, Judge Michael E. Hubner permitted defendant to testify regarding the voluntariness of his guilty plea. Defendant stated his attorney "basically told [him his] only option was to do a plea and to move on" and that he only agreed to plead guilty because he "was very nervous and anxious and . . . really didn't understand the whole parameters of what would happen going forward."

Judge Hubner denied defendant's application and memorialized his ruling in an order and written opinion issued on June 24, 2020. The judge initially considered defendant's <u>Slater</u> arguments and concluded that under a "totality analysis of the facts, evidence, and case law," defendant had not asserted a colorable claim of innocence, <u>Slater</u>, 198 N.J. at 150, as he was satisfied that defendant operated a motor vehicle contrary to N.J.S.A. 39:4-50 because the facts circumstantially established defendant operated his car while intoxicated.

In this regard, the judge noted that: 1) defendant's wife noticed that defendant smelled of alcohol when he arrived at the marital residence, 2) defendant admitted to consuming three airplane-sized bottles of alcohol earlier in the day, 3) his blood alcohol level was nearly four times the legal limit, and

A-4094-19

4) he told Thompson that he did not consume any alcohol at the home. Further, Judge Hubner noted that the record contained no mention that a third party drove defendant to the residence or that he used public transportation.

Judge Hubner next considered the "nature and strength of [defendant's] reasons for withdrawal," Slater, 198 N.J. at 150, and determined that defendant's proffered bases, including the State's error on the original issuing summonses, failed to warrant withdrawal of his fully informed plea agreement. Finally, the judge concluded that the State would not be prejudiced if defendant was permitted to withdraw his plea.

Judge Hubner next addressed defendant's ineffective assistance of counsel claims and concluded he failed to satisfy the first prong of the two-part Strickland/Fritz test. In concluding counsel's performance was not constitutionally deficient, the judge considered that defendant entered the plea voluntarily and knowingly, that he expressed satisfaction with his counsel's services, and that defendant's counsel moved to suppress defendant's incriminating statements. Finally, the judge explained that counsel's failure to raise the operation issue did not amount to deficient performance because there was "no certainty that such an argument would have been successful" in light of

the circumstantial evidence supporting defendant's operation of his vehicle on April 18, 2017.

## II.

On appeal, defendant presents the following arguments for our consideration:

POINT I

The Trial Court Erred in Finding That Defendant Has Not Asserted A Colorable Claim of Innocence.

POINT II

The Trial Court Erred in Finding That Defendant Has Not Met the Burden to Establish Ineffective Assistance of Counsel.

POINT III

The Trial Court Erred in Finding That an Incorrect Address Holds Little Weight.

POINT IV

The Trial Court Erred in Finding Defendant Entered into The Plea Knowingly and Voluntarily.

We first address the significant procedural infirmities with respect to defendant's appeal. We note that the record on appeal does not include a copy of defendant's PCR petition. See R. 7:10-2. This is not an inconsequential omission. Rule 2:6-1(a)(1)(I) requires an appellant to include in the appendix

13

A-4094-19

to his brief "such . . . parts of the record . . . as are essential to the proper consideration of the issues." Because "filed documents in the action bearing on the issues on appeal are required to be included in the appendix[,] . . . the [a]ppellate [c]ourt may decline to address issues requiring review of those parts of the trial record not included in the appendix." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 2:6-1 (2021); see also Cmty. Hosp. Group, Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005) (noting that an appellate court is not "obliged to attempt review of an issue when the relevant portions of the record are not included").

Further, as we explained in State v. Brewster, Rules 3:22-8 and 3:22-10(c) "require that the facts a defendant alleges be provided by means of a verified petition or a supplementary affidavit or certification." 429 N.J. Super. 387, 396 (App. Div. 2013); see also State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). We also note defendant, without seeking to supplement the record, see R. 2:5-5, included a "[c]ertification . . . in support of appeal" in his appendix.[5] As the certification is dated October 27, 2020, after the court's May

_____

[5] In general, defendant's certification includes statements related to his plea similar to those made when he testified at oral argument, and which we address

22, 2020 order, it could not have been presented to the trial court, and it is improper to submit the certification for our consideration in the first instance. See Liberty Surplus Ins. v. Nowell Amoroso, P.A., 189 N.J. 436, 452 (2007) ("Our appellate courts will not ordinarily consider evidentiary material that is not in the record below." (citation omitted)).

Although we could reject defendant's ineffective assistance of counsel claims based on these procedural infirmities, we nevertheless address defendant's arguments substantively and find no merit to any of his contentions and affirm substantially for the reasons stated by Judge Hubner in his June 24, 2020 written decision. We agree with Judge Hubner that the defendant failed to establish the first prong of the Strickland/Fritz test and similarly failed to carry his burden under Slater to withdraw his guilty plea. We provide the following additional comments to amplify our decision.

---

infra pp. 21-22. He also certified, in part, that he was in the marital residence's basement on April 18 "working on a house project," and consumed "hidden" alcohol while there, contrary to Thompson's investigation report and his wife's statements and observations. Other statements contained in the certification are inconsistent with the admissions he made before the plea court, such as operating a motor vehicle while under the influence of alcohol. We also note that at no point in the record below, or in his certification submitted to us, did defendant attest that he informed his counsel of these facts.

## III.

A request to withdraw a plea and a petition for PCR based on ineffective assistance of counsel are "distinct, and governed by different rules of court." State v. O'Donnell, 435 N.J. Super. 351, 368 (App. Div. 2014). "They must be considered separately." Ibid. A motion to withdraw a plea may be made after sentencing "if the movant shows a 'manifest injustice.'" Ibid. (quoting R. 3:21-1). "By contrast, a petition for PCR must be filed within five years of the challenged judgment of conviction, absent excusable neglect where enforcement of the bar would result in a 'fundamental injustice.'" Id. at 368-69 (quoting R. 3:22-12(a)). "[C]onsideration of a plea withdrawal request," however, "can and should begin with proof that before accepting the plea, the trial court followed the dictates of Rule 3:9-2." Ibid. (quoting Slater, 198 N.J. at 155).

We review a judge's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion. Brewster, 429 N.J. Super. at 401 (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)). However, where no evidentiary hearing was conducted, we "may review the factual inferences the court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016).

16

We will not disturb a trial court's denial of a defendant's request to withdraw his guilty plea unless there was "an abuse of discretion which renders the lower court's decision clearly erroneous." State v. Simon, 161 N.J. 416, 444 (1999). We review a trial court's Slater analysis under an abuse of discretion standard "because the trial court is making qualitative assessments about the nature of a defendant's reasons for moving to withdraw his plea and the strength of his case and because the court is sometimes making credibility determinations about witness testimony." State v. Tate, 220 N.J. 393, 404 (2015).

"The withdrawal of a guilty plea is not an 'absolute right,'" Simon, 161 N.J. at 444 (citation omitted), and the defendant bears the burden of establishing a basis for relief. Slater, 198 N.J. at 156. "[F]indings made by the trial court when accepting the plea, constitute a 'formidable barrier' which defendant must overcome before he will be allowed to withdraw his plea." Simon, 161 N.J. at 444 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). "That is so because '[s]olemn declarations in open court carry a strong presumption of verity.'" Ibid. (alteration in original) (quoting Blackledge, 431 U.S. at 74).

Additionally, whether a defendant seeks to withdraw a plea before or after sentencing, "[t]iming matters." Slater, 198 N.J. at 160. Thus, at or before sentencing, a "defendant shall be permitted to withdraw" a guilty plea if "the

interests of justice would not be served by effectuating the [plea] agreement," Rule 3:9-3(e), and, in such cases, "courts are to exercise their discretion liberally to allow plea withdrawals." Slater, 198 N.J. at 156 (citation omitted). Applying these standards, we discern no reason to reverse the denial of defendant's PCR petition or his motion to vacate his plea agreement.

Here, we evaluate the court's denial of defendant's PCR petition under an abuse of discretion standard and apply de novo review to any factual inferences, as we do not consider defendant's testimony at oral argument as an evidentiary hearing regarding the ineffective assistance of counsel claims he asserts before us. Applying that standard of review, we agree with Judge Hubner that defendant's counsel was not constitutionally ineffective for failing to challenge the State's claim that he was operating a motor vehicle while intoxicated contrary to N.J.S.A. 39:4-50(a). It is well-settled that the "failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." State v. Worlock, 117 N.J. 596, 625 (1990) (citing Strickland, 466 U.S. at 688; Fritz, 105 N.J. at 52).

A person is deemed to have been driving while intoxicated if that person "operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug." N.J.S.A. 39:4-50(a). "Actual

operation is not required . . . ." State v. Ebert, 377 N.J. Super. 1, 10 (App. Div. 2005). "'Operation' may be prove[n] by actual observation of the defendant driving while intoxicated," by defendant's admission, or through circumstantial evidence reflecting circumstances that the defendant was driving while intoxicated. Id. at 10-11 (citations omitted).

Contrary to defendant's argument, there existed substantial circumstantial evidence in the record to support the conclusion that defendant operated the vehicle while intoxicated. Defendant arrived at the marital residence shortly before his wife called the police. According to Thompson's report, which is included in the record, defendant admitted to consuming alcohol earlier in the day, acknowledged there was no alcohol in the home, was observed visibly intoxicated shortly after he arrived, and reported a BAC well in excess of the legal limit. Thompson also reported the vehicle exhibited a "metal popping" noise, suggesting recent operation. Finally, there was no certified statement in the record, see Cummings, 321 N.J. Super. at 170, to support any inference that defendant arrived at the house with the assistance of a third-party driver or by public transportation.

We also reject defendant's claims that the purported incorrect address on the summonses supported either withdrawal of his plea under Slater, or post-

19

conviction relief under the <u>Strickland</u>/<u>Fritz</u> test. Specifically, defendant contends the summonses listed an address that "does not exist," and contrary to that identified on his license and the residence where he was arrested.

As the Supreme Court has instructed in <u>State v. Cummings</u>, where "[n]o complaint has been raised concerning that error" and "no prejudice resulting from it" has been identified, dismissal of the charge is not required. 184 N.J. 84, 90 n.1 (2005). To hold otherwise would place "form over substance," an approach disfavored in our State. <u>State v. Fisher</u>, 180 N.J. 462, 472 (2004); <u>see also</u> <u>R.</u> 3:7-3(a) ("[E]rror in the citation [to a statute] or its omission shall not be ground for dismissal of the indictment or accusation or for reversal of a conviction if the error or omission did not prejudicially mislead the defendant."); <u>State v. Latorre</u>, 228 N.J. Super. 314, 319 (App. Div. 1988) (holding officer's failure to sign a DWI summons did not deprive the summons of its effectiveness); <u>State v. Ryfa</u>, 315 N.J. Super. 376, 383 (Law Div. 1998) (concluding traffic complaint that failed to specify the municipality of the offense was not invalid).

Here, it does not appear that defendant raised the issue of the purported inaccurate address listed on the summonses with the municipal court prior to his conditional plea, preventing the court from issuing corrected charging

documents.  In any event, defendant was fully informed of the charges against him as evidenced by his <u>Miranda</u> challenge to his inculpatory statements, and the filing of a direct appeal.  He suffered no prejudice as a result of the alleged incorrect address on the summonses.[6]  As such, any error with regard to the address listed on the summonses does not warrant relief under <u>Slater</u> or <u>Strickland</u>/<u>Fritz</u>.

Finally, we reject defendant's request for post-conviction relief based on his claim that his plea was not entered on a voluntary and knowing basis because his attorney "rushed" him to accept the plea.  At his plea hearing, defendant was given the opportunity to reschedule the sentencing but after conferring with counsel, and after being assured that his statements at the plea hearing could not be used against him, provided a detailed factual statement in which he admitted he operated his vehicle while intoxicated.  Defendant also acknowledged that he entered the plea voluntarily and knowingly.

As noted, at oral argument, defendant testified that his counsel "told [him his] only option was to do a plea and to move on" and that he only agreed to

---

[6]  We note that according to the investigative report, defendant provided Thompson with his then-current address, which was different from that on his license.  We cannot discern if the police relied upon such information received from defendant when completing the summonses.

plead guilty because he "was very nervous and anxious" and "didn't understand the whole parameters of what would happen going forward." Here, in rejecting defendant's argument, Judge Hubner considered defendant's initial plea colloquy as well as his testimony at oral argument and determined that defendant entered a voluntary and knowing plea. We are satisfied from our review of the record that Judge Hubner's decision was not an abuse of discretion. Simon, 161 N.J. at 444. As noted, defendant's "[s]olemn declarations in open court [when he entered his plea] carry a strong presumption of verity," ibid., and require rejection of his claim that his plea was ill-informed or involuntary, warranting relief under Slater.

To the extent we have not addressed defendant's remaining arguments, it is because we have determined that they lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4094-19